UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

**CIVIL ACTION NO. 21-57-DLB-EBA**

**KATHLEEN KUHL, et al.**                                                                                                               **PLAINTIFFS**

**v.**                      **MEMORANDUM OPINION AND ORDER**

**KEVIN IGO**                                                                                                               **DEFENDANT**

*** *** *** *** *** ***

**I.    INTRODUCTION**

This matter is before the Court upon two Motions filed by Defendant Officer Kevin Igo: (1) the Motion to Strike Opinions of Plaintiff's Expert, Angela Goehring ("Motion to Strike") (Doc. # 75); and (2) the Motion for Summary Judgment (Doc. # 77). The Motions have been fully briefed and are therefore ripe for review. For the following reasons, the Motion for Summary Judgment is **granted,** and the Motion to Strike is **denied as moot**.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

The facts of this case are largely undisputed and are well documented by various video footage and incident reports. At approximately 11:00 a.m. on April 29, 2020, Covington police officers were dispatched to Charles Kuhl's residence. (Doc. # 77-1 at 3). Upon arrival, officers called an ambulance for Mr. Kuhl, who was transported by EMTs to the emergency room at the St. Elizabeth Medical Center ("SEMC") in Covington, Kentucky for a suspected overdose. (*Id*. at 2). Following treatment at SEMC, Mr. Kuhl

1

discharged himself against medical advice. (Doc. # 70-2).[1] Mr. Kuhl is then seen on SEMC video footage walking outside with his belongings, walking back in, falling backwards, hitting his head, and then displaying seizure like symptoms. (Doc. # 88-1, 1:22). Mr. Kuhl was subsequently treated for the seizure, and the SEMC report noted the impression of a closed head injury and ingestion of substance. (Doc. # 77-3 at 1). Mr. Kuhl was then placed on a 72–hour hold because he was "unsteady with attempts to ambulate" and was "not safe to be discharged." (Doc. # 77-2). However, Mr. Kuhl soon became aggressive and uncooperative. (*Id*.). Staff at SEMC ultimately contacted Covington Police Department due to Mr. Kuhl's aggressive and uncooperative behavior. (Doc. # 77-4 at 1). The Kenton County Call for Service Report details that SEMC staff called 911 at 5:04 p.m., with the call narrative stating that Mr. Kuhl was "fighting with the staff" and was "not sick enough to stay there." (*Id*.). The emergency department report, made at 5:05 p.m., noted this phone call and that Mr. Kuhl was medically cleared for jail. (Doc. # 77-2).

Defendant arrived at SEMC at 5:06 p.m. (Doc. # 77-4 at 2). As seen on Defendant's body camera video footage, upon arrival, SEMC staff tell Defendant that Mr. Kuhl was "too unsteady to send him out on his own, and too uncooperative to stay here." (Doc. # 77-5 at 1:38-1:43). SEMC staff then briefly explained to Defendant that Mr. Kuhl was there originally for an overdose, and that after he was released, he had fallen and hit his head and seized. (*Id*. at 1:50-1:59). The SEMC staff member then verbally told Defendant that Mr. Kuhl was medically cleared and handed Defendant a cleared for jail

---

[1] These facts are uncontested and were summarized from SEMCs certified medical records. (Doc. # 70-2). The medical records were produced by the Kenton County Detention Center Defendants in their Motion for Summary Judgment (Doc. # 70) and cited by Plaintiff in her Response brief in the current matter (Doc. # 94).

note.  (*Id*. at 1:56-3:18).  The note states that Mr. Kuhl was "seen and treated" by SEMC and was "medically cleared to go to jail."  (Doc. # 77-6).  As Mr. Kuhl and Defendant are attempting to leave the emergency department, Mr. Kuhl began to look through the trashcan for his belongings, which prompted another SEMC staff member to direct Mr. Kuhl to where his belongings were actually placed.  (Doc. # 77-5 at 2:30-2:36).  Mr. Kuhl then told Defendant he was highly disoriented, and when asked why he was disoriented, responded with unintelligible mumbling, with a mention of Seroquel.  (*Id*. at 2:40-2:49).

Mr. Kuhl and Defendant then walked to the SEMC sallyport, where Mr. Kuhl is visibly unsteady and needed direction to leave the building.  (*Id*. at 3:46-4:10).  As Mr. Kuhl was standing in the sallyport, he continued to be visibly unsteady, tripping over himself, dropping his belongings, and needing assistance to stand up.  (*Id*. at 4:13-5:30).  After observing Kuhl's actions, Officer Igo arrested Mr. Kuhl for public intoxication (controlled substance) and criminal trespassing 3rd degree.  (Doc. # 77-7); (*see also* Doc. # 77-5 at 5:15-5:20).  After pulling his car closer to the sallyport, Defendant helped Mr. Kuhl into the police vehicle.  (*Id*. at 6:00-8:00).  As Defendant searched through Mr. Kuhl's backpack he discovered six used syringes.  (*Id*. at 8:19-13:00).  While Mr. Kuhl was sitting in Defendant's vehicle, he displayed signs of hallucinations, paired with incoherent mumbling.  (*Id*. at 13:00-38:50).

Mr. Kuhl and Defendant arrived at the sallyport of the Kenton County Detention Center ("KCDC") around 6:00 p.m.  (Doc. # 77-4 at 2).  Upon arriving at the KCDC, Mr. Kuhl continued to display difficulty speaking clearly and was visibly unsteady.  (Doc. # 77-5 at 39:40-41:25).  Mr. Kuhl additionally needed help getting out of Defendant's vehicle and was brought a chair so he could sit outside the KCDC.  (*Id*.).  At that time Defendant

left Mr. Kuhl in the care of the KCDC.  (*Id*. at 46:40-47:00).   Mr. Kuhl was found unresponsive the next day on April 30, 2020.  (Doc. # 77-9 at 2).

Based on the above, Kathleen Kuhl ("Plaintiff"), individually and as administratrix of the estate of Charles Kuhl, filed a Complaint on April 29, 2021.  (Doc. # 1).  Later, Plaintiff was granted leave to file an amended complaint, which was filed on October 26, 2021.  (Doc. # 21).  In the First Amended Complaint, Plaintiff brought numerous claims against Defendant.  After all Defendants' Motion for Partial Judgment on the Pleadings was filed and briefed,[2] this Court dismissed with prejudice Counts VII and VIII.  (Doc. # 41).  Defendant then filed the instant summary judgment Motion (Doc. # 77) on all remaining claims, as well as the Motion to Strike (Doc. # 75).  In her Response to Defendant's summary judgment Motion, Plaintiff voluntarily waived her excessive force (Count IV), failure to protect (Count V), and battery claims (Count X), leaving two remaining claims.  (Doc. # 94 at 21).

### III.   ANALYSIS

#### A.   Standard of Review

Defendant has moved for summary judgment on Plaintiff's remaining claims of deliberate indifference (Count I) and wrongful death (Count VI).  (Doc. # 77).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[2]   The Partial Motion for Judgment on the Pleadings was filed by all Defendants, including Officer Igo, at that time.  Those Defendants are not parties to this Motion.

4

"The moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). The movant may do so by "citing to particular parts or materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A). Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. It must produce evidence showing that a genuine factual issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If, after reviewing the record as a whole, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

    **B.**    **Analysis**

        ***1.***    ***Motion for Summary Judgment***

Defendant moves for entry of summary judgment on all of Plaintiff's remaining claims. (Doc. # 77). In Plaintiff's Response, Plaintiff states she is waiving her claim of excessive force (Count IV), failure to protect (Count V), and battery (Count X) against

5

Defendant. Therefore, Plaintiff's remaining claims are the deliberate indifference claim (Count I) and wrongful death claim (Count VI). The Court concludes that entry of summary judgment in Defendant's favor is appropriate for each claim. The Court will address each claim in turn.

### a.  Deliberate Indifference Claim

Pretrial detainees maintain the right to adequate medical treatment pursuant to the Due Process Clause of the Fourteenth Amendment. *Batton v. Sandusky Cnty.*, No. 23-3168, 2024 WL 1480522, at *3 (6th Cir. 2024). A government official violates that right by acting with "deliberate indifference" to the detainee's "serious medical needs." *Id*. Recently clarified by the Court in *Helphenstine v. Lewis Cnty., Ky.*, to prevail on a deliberate indifference claim, a plaintiff "must show (1) that [the detainee] had a sufficiently serious medical need and (2) that each defendant 'acted deliberately (not accidentally), and also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" 60 F.4th 305, 317 (6th Cir. 2023) (quoting *Brawner v. Scott Cnty., Tenn.*, 14 F.4th 585, 596 (6th Cir. 2021) (punctuation modified)). "Stated differently, a pretrial detainee must have a serious medical need, and the defendant must act, whether through intentional action or omission, recklessly in response to the need and the risk it presented to the detainee." *Bartlett v. Skaggs*, No. 4:22-CV-P158, 2024 WL 4607714, at *4 (W.D. Ky. Oct. 29, 2024).

Here, Plaintiff alleges that Defendant was deliberately indifferent to Mr. Kuhl's objectively serious medical needs in violation of his constitutional right to receive medical care. (Doc. # 21 ¶¶ 64-72). Specifically, Plaintiff alleges that Mr. Kuhl was experiencing intoxication, and as a result of Defendant's deliberate indifference, Mr. Kuhl suffered

6

"severe emotional, economic, and physical injuries" which "ultimately resulted in his physical pain, emotional suffering, and death."[3] (Doc. # 21 ¶ 68). Defendant disagrees, arguing that Mr. Kuhl neither suffered from a sufficiently serious medical need, nor did Defendant intentionally or recklessly disregard that need. (Doc. # 77 at 7). The Court addresses each prong in turn.

> ***i.  Mr. Kuhl did not suffer from a sufficiently serious medical need.***

The first prong of the deliberate indifference test, the objective component, is whether Mr. Kuhl suffered from a sufficiently serious medical need. "A sufficiently serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Yarborough v. Henderson Cnty., Tenn.*, No. 23-5117, 2024 WL 229665, at * 4 (6th Cir. 2024) (quoting *Griffith v. Franklin Cnty.*, 975 F.3d 554, 567 (6th Cir. 2020) (internal quotation marks omitted). Here, Plaintiff alleges that "Mr. Kuhl was in obvious need of substantial medical assistance for his intoxication and/or severe physical and cognitive impairment[.]" (Doc. # 21 ¶ 68). However, intoxication, in and of itself, is not a sufficiently serious medical need. *See Border v. Trumbull Cnty. Bd. Of Com'rs.*, 414 F.App'x 831, 837 (6th Cir. 2011) ("[A] pretrial detainee's generalized state of intoxication, without more, is insufficient to establish a serious medical need or an officer's deliberate indifference to a substantial risk of serious harm to a detainee."); *see also Meier v. Cnty. of Presque Isle*, 376 Fed. Appx. 524, 529 (6th Cir. 2010) (detainee's "intoxication

---

[3] While the parties do not address whether Mr. Kuhl's intoxication was the proximate cause of his death, it should be noted that the coroner's report lists Mr. Kuhl's immediate cause of death as "hypertensive and atherosclerotic cardiovascular disease." (Doc. # 77-9 at 2). In the subsequent section that requires a list of any underlying causes which are defined as "disease or injury that initiated events resulting in death[,]" such section was left blank. (*Id.*).

7

by itself—even at the extreme level indicated by the BAC—was insufficient to put [Defendant] on notice that [the detainee] needed medical attention"); *Smith v. Pike Cnty., Ky.*, 338 Fed. Appx. 481, 482 (6th Cir. 2009) (defendants entitled to qualified immunity because "at the time of the events [], an intoxicated detainee had no clearly established constitutional right to a hospital evaluation in the absence of medical need that was both 'apparent and serious'").

Rather, to establish an intoxicated detainee suffered from a sufficiently serious medical need, courts have relied on the "extreme nature of [the detainee's] intoxication." *Hinneburg v. Miron*, 676 F. App'x 483, 486 (6th Cir. 2017)*; see Preyor v. City of Ferndale*, 248 F. App'x. 636, 642 (6th Cir. 2007) (inmate vomited, had diarrhea, and was seen lying on the cell floor); *Bertl v. City of Westland*, No. 07-2547, 2009 WL 247907, at *5-6 (6th Cir. 2009) (inmate lying face down on the floor unresponsive and having seizure like spasms); *Burwell v. City of Lansing, Mich.*, 7 F.4th 456, 464 (6th Cir. 2021) (detainee was "bent at the waist, swaying and rocking on the bench inside his cell, grabbing his head and midsection, dropping his sandwich numerous times, and falling to the floor repeatedly.").

Moreover, even when a detainee may be exhibiting signs of extreme intoxication, if medical personnel previously observed the detainee, and did not find medical attention necessary, then a plaintiff is unlikely to establish that such a need was obvious to a lay person. For example, in *Spears v. Ruth*, the Sixth Circuit concluded that the plaintiff did not establish a sufficiently serious medical need. 589 F.3d 249, 254 (6th Cir. 2009). There, the decedent admitted to smoking crack cocaine, told the officer he had been running away from dogs, and was "acting like he had bugs crawling on him and in his

8

pockets." *Id*. Despite the decedent acting visibly intoxicated, both the EMTs at the scene, and a jail nurse, did not think medical attention was necessary. *Id*. at 255. The Sixth Circuit noted that because the EMTs and jail nurse who "presumably had a greater facility than the average layperson to recognize an individual's medical need" determined that the decedent did not need to be transported to a hospital, it was therefore not obvious to the Officer "who was less able than EMTs to determine [the decedent's] medical needs." *Id*. As a result, the Sixth circuit concluded that the plaintiffs did not establish the obvious existence of a sufficiently serious medical need. *Id*.

Here, Mr. Kuhl was not displaying any "extreme" symptoms of intoxication or a potential overdose. Mr. Kuhl was disoriented, unsteady on his feet, and had slurred speech. (Docs. # 77-2, 77-7, and 77-5 at 1:30-8:00). None of those symptoms are symptoms "atypical . . . from the multitude of drug and alcohol abusers the jail admits everyday." *Smith v. Pike Cnty., Ky.*, No. 06-257, 2008 WL 3884331, at *7 (E.D. Ky. Aug. 18, 2008). Moreover, even if Mr. Kuhl had been displaying extreme signs of intoxication, it is undisputed that upon arrival at SEMC, a staff member notified Defendant that Mr. Kuhl had originally presented to the SEMC for an overdose and was subsequently treated after he suffered from a seizure and hit his head. (Doc. # 77-5 at 1:50-1:59). It is also undisputed that SEMC staff verbally told Defendant that Mr. Kuhl had been medically discharged and then handed Defendant a "Cleared for Jail" note.[4] (*Id*. at 1:56-3:18; *see*

---

[4] Plaintiff argues that "Igo did not know the name or title of the person he spoke with at St. Elizabeth, not knowing whether or not she was a trained medical professional" and that "Igo had no idea what, if any, diagnosis or treatment had been rendered and didn't inquire." (Doc. # 94 at 14). However, absent any supporting case law, the Court will not disregard both the verbal and written confirmation that Mr. Kuhl was cleared for jail, simply because Defendant did not know the official title or name of the employee or what treatments Mr. Kuhl underwent. To do so would require law enforcement to inquire into each hospital employee's credentials, as well as any treatment the arresting officer, untrained in medicine, thought necessary.

*also* Doc. # 77-6). Thus, the medical staff at SEMC, who "presumably ha[ve] a greater facility than the average layperson to recognize an individual's medical need" observed Mr. Kuhl's behavior, administered tests based on those observations, and concluded that Mr. Kuhl was medically cleared for jail. *Spears*, 589 F.3d at 255. Therefore, Plaintiff has not established that Mr. Kuhl's condition and need for medical attention, "which was not obvious to trained medical personnel, would have been obvious to a layperson or to [Defendant]". *Id*.

Plaintiff argues that the medical clearance by SEMC staff is immaterial because "the change in Mr. Kuhl's condition occurred **after** Kuhl left the hospital." (Doc. # 94 at 12) (emphasis and bold in original). Specifically, Plaintiff points to the "incoherent mumblings" and "various hallucinations" that occurred during the transport of Mr. Kuhl to the KCDC. (*Id.*). However, these hallucinations began mere minutes after Mr. Kuhl had been released from the hospital for a suspected drug overdose. Moreover, while still inside the SEMC, a staff member witnessed Mr. Kuhl digging around in the trashcan in an attempt to obtain his belongings. (Doc. # 77-5 at 2:30-2:36). Thus, even if the staff did not witness Mr. Kuhl's specific hallucinations about smoke, SEMC staff at the very least witnessed Mr. Kuhl's very serious disorientation and still discharged him. Therefore, the Court does not find that Plaintiff has established that Mr. Kuhl's condition had deteriorated so intensely that it would have been obvious to Officer Igo that he should disregard the medical advice from those at SEMC and should transport Mr. Kuhl to a different hospital. See *McGaw v. Sevier Cnty., Tenn.*, 715 F. App'x 495, 498 (6th Cir. 2017) ("The record does not show any evidence that the officers were or should have been aware that their lay understandings of this situation were superior to [the Nurse's]

trained assessment."). Therefore, Plaintiff has failed to show that Mr. Kuhl suffered from a sufficiently serious medical condition rising to the level of a serious medical need for Fourteenth Amendment purposes.

### ii. Defendant Igo did not act deliberately and recklessly.

Having found that Plaintiff has failed to set forth the objective component of a Fourteenth Amendment violation, the Court need not address the subjective prong. However, assuming, *arguendo*, that Mr. Kuhl had suffered from a sufficiently serious medical condition, Defendant would still be entitled to summary judgment as Plaintiff has failed to establish that "[Defendant] 'acted deliberately (not accidentally) [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Helphenstine*, 60 F.4th at 317 (quoting *Brawner*, 14 F.4th at 596.).

The Sixth Circuit has repeatedly held that "a non-medically trained officer does not act with deliberate indifference to an inmate's medical needs when he reasonably deferred to a medical professional's opinions." *Green v. Crawford Cnty., Mich.*, 22 F.5th 593, 608 (6th Cir. 2022) (quoting *McGaw,* 715 F. App'x at 498). In *McGaw*, the Sixth Circuit concluded that the corrections officers did not act with deliberate indifference towards the detainee's medical needs because the officers "relied on what they reasonably believed to be appropriate treatment advice by the jail nurse." 715 F. App'x at 497. Specifically, the court noted that because "[n]one of the officers had medical training, [] there is no evidence that they knew or believed that [the nurse's] diagnosis was anything but correct." *Id*. Similarly, in *Spears* the Sixth Circuit again found that an officer was not acting with deliberate indifference, despite being aware that the detainee

11

had smoked crack cocaine, because the officer "was entitled to rely on the EMTs' and the jail nurse's medical assessments that [the decedent] did not need to be transported to the hospital."  589 F.3d at 255.

Plaintiff attempts to distinguish these cases, arguing that because Mr. Kuhl's condition deteriorated in the police cruiser, and only Officer Igo was aware of this deterioration, these cases are not instructive.  (Doc. # 94 at 14).  Plaintiff points to Kuhl's various hallucinations, incoherent mumbling, physical incapacity, and disorientation as signs of new and alarming symptoms.  (*Id*. at 13).  However, as previously discussed, Defendant was aware that Mr. Kuhl had just recently been treated for a suspected overdose and seizure.  (Doc. # 77-5 at 1:50-1:59).  Moreover, the record is clear that Defendant received both verbal and written confirmation that Mr. Kuhl had been medically cleared for jail, just moments before Defendant arrived, and minutes before Mr. Kuhl's hallucinations are seen on Defendant's body camera footage.  (*Id*. at 1:56-3:18; *see also* Doc. # 77-6).  Because Defendant responded to the situation by "following the advice of a professional [Defendant] believe[d] to be capable of assessing and addressing that risk" he did not act with deliberate indifference when he followed the advice of the SEMC staff which had cleared Mr. Kuhl for jail.  *McGaw,* 715 F. App'x at 498.

Finally, Plaintiff repeatedly brings up Covington Police Department Policy and makes a passing reference to such policy in her argument section, stating that "per Covington Police Department Policy, Defendant Igo was tasked with monitoring [Mr. Kuhl's] condition and ignored those obvious signs of diminished capacity."  (Doc. # 94 at 11).  The referenced section, however, specifically refers to those persons with mental illness.  (*See* Doc. # 94 at 6) ("Under 43.1.4.B there is a list of behavior of mentally ill

persons . . . ."). There is nothing in the record that points to Defendant believing Mr. Kuhl was someone who was mentally ill. In fact, in his deposition, when asked if he thought Mr. Kuhl was mentally ill, Defendant repeatedly stated that he thought Mr. Kuhl was under the influence. (Doc. # 55 at 30-31). Therefore, Defendant did not violate Covington Police Department Policy, acting deliberately and recklessly towards Mr. Kuhl.

For these reasons, Defendant Igo is therefore entitled to summary judgment on Plaintiff's deliberate indifference claim.

### b. Wrongful Death Claim

Defendant additionally alleges he is entitled to summary judgment on Plaintiff's wrongful death claim. (Doc. # 77 at 12). Plaintiff's wrongful death claim, as stated in the Amended Complaint, states that "[o]n or about April 30, 2020, Defendants, [ ] beat and used excessive force thereby resulting in serious physical injury and ultimately [Mr. Kuhl's] death." (Doc. # 21 ¶ 99). Defendant argues that he is entitled to summary judgment because "Kuhl was not in the custody of Officer Igo at the time his injuries occurred, nor were the violent acts alleged perpetrated by Igo." (Doc. # 77 at 12). It is undisputed that Mr. Kuhl was not in Officer Igo's custody on April 30, 2020. The record plainly establishes that Mr. Kuhl was in Officer Igo's custody for a limited amount of time on April 29, 2020. (*See* Doc. # 77-5). Therefore, Officer Igo could not have been a party to the alleged beating and excessive force on April 30, 2020.

Plaintiff attempts to raise new theories in her Response to Defendant's summary judgment motion. Specifically, Plaintiff now alleges that the "primary thrust" of the wrongful death claims were "Mr. Kuhl's access to adequate medical care" and Officer Igo's "failure to treat Mr. Kuhl's serious medical needs[.]" (Doc. # 94 at 20). Plaintiff's

13

attempts at raising new wrongful death theories at this time is improper. "A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion." *Tucker v. Union of Needletrades, Indus. and Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting 10A Charles Alan Wright, et al., Federal Practice and Procedure § 2723 (3d ed. Supp.2005)). And "a plaintiff may not expand its claims to assert new theories ... in response to summary judgment[.]" *RJ Control Consultants, Inc. v. Multiject, LLC*, 981 F.3d 446, 454 (6th Cir. 2020). Therefore, the Court grants summary judgment in favor of Defendant on Plaintiff's wrongful death claim.

### 2. *Motion to Strike*

Defendant requests that the Court strike the opinions of Plaintiff's expert, Angela Goehring, pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). (Doc. # 75 at 1). Defendant specifically argues that Ms. Goehring does not have the "experience, education, training, knowledge, or other qualification in the area of law enforcement – to serve as an expert witness." (*Id*. at 2). Having already determined that Defendant is entitled to summary judgment on all of Plaintiff's claims, and Goehring's opinions having no bearing on the Court's adjudication of Defendant's Motion for Summary Judgment, the Court need not address these arguments. Therefore, the Motion to Strike (Doc. # 75) is **denied as moot**.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1) Defendant Kevin Igo's Motion for Summary Judgment (Doc. # 77) is **GRANTED**;

(2) Defendant Kevin Igo's Motion to Strike Opinions of Plaintiff's Expert, Angela Goehring (Doc. # 75) is **DENIED AS MOOT**;

(3) This matter is **STRICKEN** from the Court's docket; and

(4) A **Judgment** in favor of **Defendant Kevin Igo** will be entered contemporaneously herewith.

This 11th day of February, 2025.

Signed By:
*David L. Bunning*
Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2021\21-57 MOO MSJ.docx